# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

TIMOTHY J. PAGLIARA,      )
                                     )
      **Plaintiff,**          )
                                       )     **Case No. 3:10-cv-00679**
**v.**                                 )     **Judge Trauger**
                                       )
**JOHNSTON BARTON PROCTOR &**    )
**ROSE, LLP,**                    )
                                       )
      **Defendant.**       )

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

Defendant Johnston Barton Proctor & Rose, LLP, ("Johnston Barton"), pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), has moved the Court to dismiss Plaintiff Timothy J. Pagliara's ("Plaintiff" or "Pagliara") Complaint for, respectively, (i) lack of personal jurisdiction, and (ii) failure to state a claim.

## FACTUAL BACKGROUND[1]

### *Background with NBCS*

Plaintiff, a licensed security broker, and PMW Partners d/b/a Capital Trust Wealth Management Group ("Capital Trust"), a partnership in which Plaintiff is a partner, joined NBC Securities, Inc. ("NBCS") in June 2002. (Complaint ("Compl.") at ¶¶ 5, 7). In 2008, NBCS was acquired by a subsidiary of Royal Bank of Canada. (*Id.* at ¶ 19). That acquisition led to ongoing "protracted litigation" between NBCS and Capital Trust. (*Id.* at ¶¶ 18-22). Defendant Johnston

---

[1] This Factual Background section addresses only the facts alleged in the Complaint and applies to the entire memorandum of law and motion to dismiss. In Section I of the Argument, Johnston Barton will address the specific facts and arguments that establish why Johnston Barton is not subject to personal jurisdiction in Tennessee and will incorporate facts from the affidavit of David W. Proctor to assist in establishing those jurisdictional facts.

1

Barton, a Birmingham, Alabama law firm, represents NBCS in connection with some of these disputes. (*Id.* at ¶ 23).

*The Smith Allegations and Settlement*

With these "hostile circumstances" of litigation in the background, an individual identified in the Complaint as "Philip Smith" ("Smith") sent a demand letter via his Florida-based counsel to Scott Wilkins, Chief Compliance Officer of NBCS. (*Id.* at ¶ 16, 22). Smith threatened to sue Plaintiff and NBCS based on investment advice Plaintiff gave Smith which purportedly caused Smith to lose money in the equity markets. (*Id.* at ¶ 16; *see also id.* at ¶¶ 5-15).[2]

NBCS retained Defendant Johnston Barton to handle the Smith claim. (*Id.* at ¶ 23). Johnston Barton notified Plaintiff's counsel that, pursuant to the License Agreement between NBCS and Capital Trust, NBCS would defend the claim, and would seek indemnification from Capital Trust for costs and any damages paid to Smith. (*Id.* at ¶ 24). The License Agreement, a true and correct copy of which is attached hereto as <u>Exhibit A</u>, requires that Capital Trust indemnify NBCS for any and all claims made against NBCS arising out of Capital Trust (or any of its representatives') affiliation with NBCS.[3] (*Id.*; License Agreement (Ex. A) at ¶ 6). According to the Complaint, Johnston Barton also instructed Plaintiff not to contact Smith or his counsel. (Compl. at ¶ 30).

---

[2] The twelve or thirteen paragraphs recounting the history of Plaintiff's relationship with Mr. Smith leading up to Mr. Smith's complaint and demand letter (Compl. ¶¶ 5-15, 17) are simply irrelevant to any claim asserted in this case and need not be addressed further.

[3] "The Sixth Circuit has held that documents that a defendant attaches to a motion to dismiss, which are referred to in the plaintiff's complaint and are central to his claim, may be considered as part of the pleadings in resolving a motion to dismiss." *Givens v. Tenn. Football, Inc.*, 684 F. Supp. 2d 985, 990, n. 3 (M.D. Tenn. 2010) (citing *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 296-97 (6th Cir. 2008)). Here, given that Plaintiff refers repeatedly to the License Agreement, and indeed bases his case on a purported duty to Plaintiff arising from its indemnity language, the Court may consider the License Agreement in ruling on this Rule 12 motion.

2

Although Plaintiff fails to acknowledge it anywhere in his Complaint, pursuant to the express terms of the License Agreement, NBCS "at its sole option and without the prior approval of [Capital Trust or Plaintiff], may settle or compromise any claim at any time." (License Agreement (Ex. A) at ¶ 6). And in fact, NBCS and Johnston Barton negotiated a settlement with Smith's Florida counsel under which NBCS agreed to pay Smith $30,000. (*Id.* at ¶ 25). According to Plaintiff, they did so in a "transparent attempt to harm Mr. Pagliara and his reputation," and neither NBCS nor Johnston Barton discussed Smith's claims with Plaintiff prior to reaching a settlement. (*Id.* at ¶¶ 25, 28). However, as alleged in the Complaint, NBCS did not negotiate a release of Smith's claims against Plaintiff with this settlement. Moreover, after further consideration and consultation with NBCS's Tennessee counsel, Bass, Berry, and Sims, PLC, NBCS dropped its request for reimbursement or indemnification from Plaintiff or Capital Trust for the Smith settlement. (*Id.* at ¶¶ 29, 33).

*Plaintiff's Alleged Claims*

From these facts, Plaintiff has crafted an elaborate theory of liability against NBCS' legal counsel. Plaintiff alleges that "NBCS looked at Mr. Smith's claim as an opportunity to exact some form of revenge against Mr. Pagliara," and that "[t]he decision to settle Mr. Smith's claim for $30,000 had nothing to do with the merits of Mr. Smith's claim but rather had everything to do with the desire to harm Mr. Pagliara and his reputation." (Compl. at ¶¶ 22, 28). Plaintiff bases this allegation on his personal assessment that Smith's claims were "baseless" and that Plaintiff had somehow mitigated Smith's damages such that Smith's net loss at the time of settlement was $16,000. (*Id.* at ¶ 27). Plaintiff further claims that NBCS's settlement damaged him, because under the rules of the Financial Institutions Regulatory Authority ("FINRA"), Plaintiff would have to report any settlement in excess of $15,000. (*Id.* at ¶ 31).

Although NBCS, of course, is the party who settled Mr. Smith's claims, Plaintiff alleges that Johnston Barton knew that settling Smith's claims would affect Plaintiff's previously "spotless regulatory record" as a licensed security broker.[4]  (*Id.* at ¶ 31).  Plaintiff also alleges that, upon learning of the settlement, he objected and "threatened legal proceedings *against [NBCS]* if it proceeded with the proposed settlement."  (*Id.* at ¶ 32) (emphasis added).[5]

Despite the fact that (a) NBCS had every right to settle (including the right to settle or not to settle claims against Plaintiff) with Smith; (b) Johnston Barton merely represented NBCS in negotiating the settlement with Smith; (c) NBCS, and not Johnston Barton, settled the Smith claim; and (d) Plaintiff had his own counsel, Plaintiff makes the bold claim that Johnston Barton somehow owed Plaintiff a fiduciary duty in connection with its handling of the claim for NBCS and breached it by negotiating the Smith settlement.  (Compl. at ¶ 34).  Plaintiff further alleges that he was damaged by the settlement because the settlement must be reported, which will hurt his reputation.  (*Id.* at ¶ 37).  The sole alleged basis for this duty is the fact that NBCS planned to seek indemnity from Plaintiff or Capital Trust for the costs of defending the claim and for any damages awarded.  (*Id.* at ¶¶ 34, 37).  According to the Complaint, however, NBCS ultimately dropped the claim for indemnification.  (*Id.* at ¶ 33).  Thus, neither Capital Trust nor Plaintiff was required to pay any money in relation to the defense and settlement of the claim by Smith against NBCS.  (*Id.*).

---

[4] While clearly only the party against whom a claim is asserted (and not the party's attorneys) can settle a claim, at various times throughout his Complaint Plaintiff alleges that Johnston Barton, and not NBCS, settled the claim with Smith.  These allegations are made in spite of Plaintiff's prior assertion that NBCS, the only party who could settle the claims, was motivated to do so in order to harm Plaintiff. (Compl. at ¶ 22).

[5] Of course, as Plaintiff fails to acknowledge, he had no basis to sue NBCS given NBCS' unfettered contractual right to settle any claim against NBCS and Capital Trust or any broker employed by Capital Trust without the consent or approval of Capital Trust or any affected broker (including Plaintiff).  (License Agreement (Ex. A) at ¶ 6)).

Thus, while Plaintiff claims NBCS used the Smith claim to somehow exact revenge against Plaintiff, it is abundantly clear that *Plaintiff* is the party using litigation as a method to exact revenge. Except here—most likely due to the obvious fact that he has no claims against NBCS, given the License Agreement—Plaintiff has chosen to exact revenge, not against his adversary in "hostile," "protracted litigation," but against his adversary's out-of-state counsel. Irrespective of Plaintiff's motives, Johnston Barton is not subject to personal jurisdiction in Tennessee federal court, and Plaintiff's claims against Johnston Barton for breach of fiduciary duty, violation of the Tennessee Consumer Protection Act, and intentional infliction of harm fail as a matter of law. For those reasons, Plaintiff's Complaint should be dismissed with prejudice in its entirety.

## ARGUMENT

### I. Plaintiff's Claims Must Be Dismissed Under Rule 12(b)(2) As The Court Lacks Personal Jurisdiction Over Defendant Johnston Barton.

As an initial matter, Plaintiff's claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because this Court lacks personal jurisdiction over Johnston Barton. Whether this Court may exercise personal jurisdiction over Johnston Barton turns on the specific limitations of Tennessee's long-arm statute and federal constitutional principles of due process. *Estate of Thomson v. Toyota Motor Corp.*, 545 F.3d 357, 361 (6th Cir. 2008). Because Tennessee's long-arm statute has been consistently construed to extend to the limits of personal jurisdiction imposed by the Due Process Clause, the two inquiries are merged and the Court need only determine whether the exercise of personal jurisdiction over Johnston Barton is consistent with federal due process requirements. *Cumberland and Ohio Co. of Texas v. Coffman*, ___ F. Supp. 2d ____, 2010 WL 2085513, * 3 (M.D. Tenn. May 21, 2010)(citing *Bridgeport Music, Inc. v. Still N The Water Publishing*, 327 F.3d 472, 477 (6th Cir. 2003)); *Payne v. Motorists' Mutual*

*Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993). Personal jurisdiction comports with due process "where that jurisdiction stems from 'certain minimum contacts with the forum such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Bridgeport Music, Inc. v. Agarita Music, Inc.*, 182 F. Supp. 2d 653, 658 (M.D. Tenn. 2002)(quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two distinct bases for personal jurisdiction: general jurisdiction and specific jurisdiction. *Coffman, supra,* _____ F. Supp. 2d at _____, 2010 WL 2085513 at * 3 (citing *Youn v. Track, Inc.*, 324 F.3d 409, 417-18 (6th Cir. 2003)); *Bridgeport Music, Inc., supra,* 182 F.Supp. 2d at 658 (citing *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1263 (6th Cir. 1996)). Plaintiff bears the burden of establishing personal jurisdiction over Johnston Barton. *Intera Corp. v. Henderson,* 428 F.3d 605, 615 (6th Cir. 2006); *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991). Plaintiff cannot meet that burden in this case and the case must be dismissed.[6]

### A. *Johnston Barton is Not Subject to General Jurisdiction.*

"General jurisdiction exists when a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Intera Corp., supra,* 428 F. 3d at 615 (internal quotation marks and citation omitted). There is little question here but that Plaintiff can make no showing that Johnston Barton's contacts with Tennessee are

---

[6] As this Court laid out in its recent *Coffman* decision, in undertaking a decision on Defendant's motion to dismiss for personal jurisdiction, the Court "may (1) rule on the motion on the basis of affidavits submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion." *Coffman, supra,* ___ F. Supp. 2d at _____, 2010 WL 2085513 at *3 (citing *Dean v. Motel 6 Operating LP*, 134 F.3d 1269, 1272 (6th Cir. 1998)). Here, Johnston Barton has submitted the Affidavit of David W. Proctor in support of its motion. Where the Court rules on a personal jurisdiction motion on affidavits only, the plaintiff need only make a *prima facie* showing of jurisdiction. Plaintiff can make no such showing in this case.

in any respect continuous and systematic such that Johnston Barton is subject to general jurisdiction.

As set forth in the Affidavit of David Proctor filed concurrently herewith ("Proctor Affidavit"), Johnston Barton is an Alabama law firm, organized as an Alabama limited liability partnership. (Proctor Aff. ¶ 2). It has one office, located in Birmingham, Alabama. (*Id.*). All of Johnston Barton's fifty-two lawyers are licensed in (or have applied for a license in) Alabama. (*Id.* at ¶ 3). While some of these attorneys are licensed in other states, none is licensed in Tennessee. (*Id.*). Johnston Barton does not advertise or otherwise solicit business within or from the State of Tennessee. (*Id.* at ¶ 4). While Johnston Barton does occasionally represent Tennessee clients, in the vast majority of such situations, Johnston Barton is representing a Tennessee client with respect to a matter or transaction pending in Alabama. (*Id.*). Johnston Barton does occasionally represent non-Tennessee clients with respect to matters arising in Tennessee as well, but such matters are few and the contacts occasioned by them are minimal and incidental to the practice of law. (*Id.*).

These facts are insufficient to confer general jurisdiction. A recent decision of the United States District Court for the District of Maryland is instructive. *See, Katims v. Millen, White, Zelano & Branigan, P.C.,* ___ F. Supp. 2d ____, 2010 WL 1539954, * 2 (D. Md. Apr. 16, 2010). There, a Maryland physician and a company he had formed sued the defendant, a Virginia law firm, for malpractice alleging that the law firm had allowed a patent to expire and failed to notify the plaintiffs of the patent's expiration. *Id.* at *1. The law firm had represented the plaintiff for more than ten years, and during the course of such representation had had numerous communications with the forum state. *Id.* Nonetheless, the Court held that general jurisdiction over the law firm did not exist:

Here, MWZB's Maryland-contacts cannot result in a finding of general jurisdiction. It is undisputed that MWZB has no physical presence in Maryland. It has no property, employees or registered agent in Maryland. Similarly, the law firm files no Maryland tax returns and has no Maryland bank accounts. MWZB's representation of Maryland clients before the USPTO, located in Alexandria, Virginia, is insufficient to establish general jurisdiction. *See The Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 226-27 (8th Cir. 1987)(holding that general jurisdiction cannot be based upon an out-of-state law firm representing an in-state client in out-of-state proceedings). Accordingly, in order for the Court to retain jurisdiction in this case, it must have specific jurisdiction over MWZB.

2010 WL 1539954 at *2. (The *Katims* Court, as discussed below, eventually also held that it did not have specific jurisdiction over the defendant law firm. (*Id*. at *3)). *See also, e.g., Gallagher v. E.W. Scripps Co.*, No. 08-2153-STA, 2008 WL 5120902, at *3 (W.D. Tenn. Dec. 4, 2008)(holding no general jurisdiction over out-of-state law firm and attorney because, "[n]othing in the record before the Court could be construed as Defendants' continuous and systematic contacts with the state of Tennessee.")

In short, it cannot seriously be disputed that Johnston Barton is not subject to general jurisdiction in Tennessee.

B. ***Johnston Barton Is Not Subject to Specific Personal Jurisdiction.***

Contrary to general jurisdiction, "[s]pecific jurisdiction exists when a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Coffman*, ___ F. Supp. 2d at ____, 2010 WL 2085513 at *3 (citations omitted). The Sixth Circuit has established a three-part test for the determination of whether specific jurisdiction exists in a particular case: "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough

8

connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.* (quoting *Southern Machine Co. v. Mohasco*, 401 F.2d 374, 381 (6th Cir. 1968)). None of these three prongs can be satisfied in this case.

### (a) Johnston Barton Has Not Purposefully Availed Itself of the Privilege of Acting or Causing a Consequence in Tennessee.

"The 'purposeful availment' requirement is 'the *sine qua non* of *in personam* jurisdiction.'" *Bridgeport Music, Inc., supra,* 182 F. Supp. 2d at 658 (citing *Mohasco*, 401 F.2d at 381-82). This requirement is seen as "absolutely indispensable" and "disputes about whether or not there is specific personal jurisdiction in a given case often rise or fall on the issue of purposeful availment." *Coffman*, *supra,* 2010 WL 2085513 at * 3 (citing *Air Products and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550-51 (6th Cir. 2007)). The "purposeful availment" prong is satisfied "when the defendant's contacts with the forum state 'proximately result from actions by the defendant himself that create a "substantial connection" with the forum state,' and when the defendant's conduct and connection with the forum are such that he 'should reasonably anticipate being haled into court there.'" *Compuserve, Inc., supra,* 89 F. 3d at 1263 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Johnston Barton's alleged actions purportedly giving rise to the causes of action alleged here are the representation of its Alabama client, NBCS, in connection with a threatened (but not filed) claim regarding a (presumably) Tennessee investor's treatment by a Tennessee broker (Plaintiff Pagliara). That claim was made by the investor's Florida lawyer and sent specifically to NBCS' Alabama office. (Proctor Aff. ¶ 11). The entirety of Johnston Barton's handling of the Smith claim occurred in Alabama or between Alabama and Florida. (*Id.* at ¶¶ 11-12). Although it is true that Johnston Barton attorneys have traveled to Tennessee on occasion (including specifically in connection with a separate, unrelated arbitration proceeding between

NBCS and Mr. Pagliara's company, Capital Trust), they made no such trips to Tennessee in connection with the Smith matter. (*Id.* at ¶¶ 4, 8-12). The entire matter was handled from Birmingham, Alabama. (*Id.* at ¶¶ 11-12). Johnston Barton's only contact with Tennessee with respect to the matter involved limited communications with Plaintiff's counsel in Tennessee. (*Id.* at ¶ 11).

This case is a far cry from the facts on which this Court recently held an out-of-state law firm subject to personal jurisdiction. *Receiver of Assets of Mid-America Energy, Inc. v. Coffman*. 2010 WL 2085513 (M.D. Tenn. May 21, 2010). In *Coffman*, a receiver for Tennessee corporations subject to several securities fraud judgments in Tennessee courts sued Bryan Coffman and his law firm, both residents of Kentucky, alleging that the attorney and the firm intentionally misused and misdirected funds that the receiver's corporations (who were clients of defendants) had deposited into escrow accounts managed by the firm. *Id.* at *1. The defendants moved to dismiss the case for lack of personal jurisdiction on the basis that Coffman was a Kentucky resident, was licensed to practice law in Kentucky, and had only "minor contacts" with Tennessee in conjunction with the events giving rise to the litigation. *Id.*

This Court disagreed, however, concluding that it was reasonable for Coffman to be subject to personal jurisdiction in Tennessee. *Id.* at *5. Although the firm was located in Kentucky, Coffman was based in and licensed in Kentucky, and the bank accounts and records at issue were all held in Kentucky, the Court noted that defendants had represented the two Tennessee companies at issue for several years. In fact, Coffman traveled to Tennessee on several occasions in connection with the firm's representations of those companies. *Id.* at *4. It was not unusual for Coffman to be seen at the companies' Tennessee locations, and it was common for Coffman to interact with employees in Tennessee by phone and to be deeply

involved in the "day-to-day affairs" of the companies. *Id.* at *5. The Court thus concluded that "[t]his 'reaching out' to the forum on a repeated and prolonged basis is precisely the type of 'deliberate undertaking' that demonstrates purposeful availment, and, given the nature of the contacts, it would be entirely reasonable for the defendants to 'anticipate being haled into court' in Tennessee." *Id.* at *5.

Here, by contrast, Johnston Barton did not reach out to Tennessee, neither with respect to the alleged facts underlying this case nor otherwise. Rather, Johnston Barton was asked by its Alabama client to handle an unasserted claim against the client and one of its Tennessee brokers. (Proctor Aff. ¶ 11). The firm handled the entire matter from Birmingham, with the exception of limited communications with Plaintiff's own counsel and NBCS' Tennessee counsel (Bass, Berry), none of which are alleged to have given rise to any of the causes of action alleged in this case. (*Id.*). As the Ninth Circuit has held:

> Out-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state. This, of course, is not the end of the matter; the Shers allege several additional contacts between the [law firm] and California. For example, on three occasions Johnston traveled to Los Angeles to meet with the [plaintiffs] in connection with the [law firm's] representation of Sher. Even this action, however, when combined with the firm's underlying representation of a California client, does not constitute purposeful availment of the privilege of conducting activities within California.

*Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990).

Moreover, unlike in *Coffman*, Johnston Barton is not alleged to have been involved in the "day to day affairs" of any Tennessee actor here.[7] Indeed, Johnston Barton specifically is not even alleged to have represented anyone from Tennessee, or anyone who is a party to this case,

---

[7] Nor, could it be, as is clear from the Proctor Affidavit, Johnston Barton has never been involved in the day-to-day actions or operations of any Tennessee client or any non-Tennessee client acting in Tennessee, including specifically with respect to NBCS' activities in Tennessee. (Proctor Aff. ¶¶ 4, 9).

in the underlying "Smith" matter, but only to have had some duty to Pagliara due to its Alabama client's indemnity agreement with Pagliara's company, Capital Trust. (Compl. ¶¶ 34-36). *See, e.g., Star Technology, Inc. v. Tultex Corp.*, 844 F. Supp. 295, 299 (N.D. Tex. 1993)(holding no jurisdiction over an out-of-state attorney alleged by plaintiff to be in conspiracy with his client (and co-defendant) and noting that the fact that the attorney did not have an attorney-client relationship with the plaintiff made the attorney's case against personal jurisdiction stronger).

**(b)**     <u>*The Cause of Action Alleged In This Case Does Not Arise From Johnston Barton's Alleged Contacts In Tennessee.*</u>

It is equally clear that Plaintiff cannot satisfy the second prong of the *Mohasco* test as the causes of action alleged in this case do not arise from Johnston Barton's alleged contacts with Tennessee. A cause of action sufficiently "arises from" the defendant's contacts with the forum state when "the cause of action has a 'substantial connection' to the defendant's forum state activities, that is, 'where a defendant's contacts with the forum state are related to the operative facts of the controversy.'" *Coffman*, ___F. Supp. 2d___, 2010 WL 2085513, at *5, *supra* (citing *Tharo Systems, Inc. v. Cab Produkttechnik GMBH & Co.,* 196 Fed. Appx. 366, 371 (6th Cir. 2006)).

Here, the causes of action alleged by Plaintiff arise from Johnston Barton's representation of NBCS in negotiating a settlement in the Smith matter. All of Johnston Barton's dealings with respect to the negotiation of the Smith settlement occurred between Johnston Barton, in Alabama, and Smith's counsel in Florida. (Proctor Aff. ¶¶ 11-12). Johnston Barton had limited communications by telephone and e-mail with Plaintiff's counsel who resides in Tennessee. However, these communications were not related to the core facts at issue in the Complaint. In addition, Johnston Barton did not perform any legal work in connection with the Smith matter in Tennessee. (*Id.*). Thus, these "contacts" are insufficient for Plaintiff to establish that his causes

12

of action arise from contacts by Johnston Barton with Tennessee or subject Plaintiff to specific personal jurisdiction.

In general, communications from an out-of-state location are not enough to establish sufficient contacts for specific personal jurisdiction, unless the communications into the state form the very basis of the Plaintiff's tort claims. *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001). In *Neal*, the Sixth Circuit held that a citizen of Belgium was subject to personal jurisdiction in Tennessee based solely on phone calls and faxes sent by the Belgian defendant to Tennessee in which the defendant made misrepresentations about the value of a horse. *Id.* The court held that the calls and faxes to Tennessee were enough to establish specific jurisdiction in that instance because the plaintiffs alleged that the defendant intentionally defrauded them in his calls and faxes to Tennessee, and "[w]hen the actual content of the communications into the forum gives rise to an intentional tort action," the communications can be sufficient to establish specific jurisdiction. *Id.* The holding in *Janssen* does not apply in this case. To the extent Plaintiff has even alleged that Johnston Barton made communications to Tennessee, those communications do not form the basis of his causes of action. Instead, the conduct giving rise to Plaintiff's causes of action is Johnston Barton's work in negotiating a settlement of the Smith matter, which occurred in Alabama and through communications to Smith's Florida counsel. (Proctor Aff. ¶ 11).

Moreover, courts have held where the majority of a law firm's conduct in representing a client took place outside of the forum state, occasional contact by the law firm with the forum state is insufficient to establish specific personal jurisdiction over the law firm. In *Star Technology*, a Texas district court held that a Virginia-based attorney was not subject to personal jurisdiction in Texas, where his contacts in the state were limited to two trips to Texas related to

his previous representation of the plaintiff's competitor, and his name appeared on pleadings related to that representation in Texas. 844 F. Supp. at 298. More specifically, the court held that because the majority of the attorney's work appeared to occur in Washington, D.C., with the remainder of local work handled by local counsel, the attorney's contacts were "insufficient to support the Court's exercise of personal jurisdiction over him." *Id.* Here, while Johnston Barton's contacts with Tennessee were limited even further to communications with Plaintiff's counsel that were tangentially related to Johnston Barton's work in negotiating a settlement of the Smith matter, it is clear that Johnston Barton's contacts are insufficient to subject it to personal jurisdiction.

### (c) *The Exercise of Personal Jurisdiction Over Johnston Barton Would Not Be Reasonable.*

Finally, it is clear that Plaintiff cannot satisfy the third prong of the *Mohasco* test, as Johnston Barton's purported conduct is not substantially connected to Tennessee so as to make the exercise of jurisdiction over Johnston Barton reasonable. "Whether the exercise of jurisdiction over a foreign defendant is reasonable is a function of balancing three factors: 'the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.'" *City of Monroe Employees Retirement Sys. v. Bridgestone Corp.*, 399 F.3d 651, 666 (6th Cir. 2005) (quoting *Asahi Metal Indus. v. Superior Ct. of Cal.*, 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L.Ed. 2d 92 (1987)). In this case, the Defendant, Johnston Barton, is an Alabama law firm, with very little connection to Tennessee, who is being sued by a non-client based on conduct occurring almost exclusively outside of Tennessee and on behalf of a separate Alabama-based client. Thus, the burden on Defendant Johnston Barton in having the matter tried in Tennessee far outweighs any interest Tennessee has in the matter being tried in the state, or that

14

Plaintiff, who was never represented by Johnston Barton, has in obtaining relief. Therefore, it is clearly unreasonable for Johnston Barton to be subject to the jurisdiction of this court.

As one district court explained:

> Attorneys are often asked to perform services for their local clients which services may have some impact in another jurisdiction. To require an attorney to submit to personal jurisdiction in a foreign jurisdiction each time the attorney communicates instructions on behalf of a client does not comport with fundamental fairness.

*American Life and Casualty Ins. Co. v. First American Title Co.*, 772 F. Supp. 574, 579 (D. Utah 1991). Applying similar logic in a District of Kansas case, the Court found that the defendant Pennsylvania law firm could not be subject to jurisdiction in a Kansas District Court when the law firm's only connections to Kansas were that (a) attorneys from the law firm sent letters and made phone calls to its Kansas-based clients; (b) attorneys from the law firm briefly visited Kansas for discovery; and (c) the law firm received checks for its services from Kansas, all in connection to a law suit filed in North Carolina. *Biederman v. Schnader, Harrison Siegal & Lewis*, 765 F. Supp. 1057, 1060-61 (D. Kan. 1991). Specifically, the court held, "since the instant cause of action arose out of defendant's representation of a Kansas resident in litigation taking place in other forums, the exercise of jurisdiction over the defendants would be neither fair nor reasonable." *Id.* at 1061.

Here, Johnston Barton's connections to Tennessee are even more tenuous, as the Plaintiff bringing suit against Johnston Barton is not even a client of Johnston Barton, and the conduct on which Plaintiff is bringing his claims is related to Johnston Barton's representation of an Alabama corporation in settlement negotiations with a Florida lawyer. Therefore, it would clearly be neither fair nor reasonable to subject Johnston Barton to jurisdiction in Tennessee. *See Star Technology*, 844 F. Supp. at 299 (holding that the defendant's status as an attorney practicing in Texas for the limited purpose of a lawsuit would not subject him to personal

jurisdiction, and noting "the facts here are even stronger on this point because the attorney-client relationship was between [Defendant] and [his client], not [Defendant] and Plaintiff.").

Because Johnston Barton is not subject to personal jurisdiction in Tennessee, the Complaint should be dismissed.

## II. Plaintiff's Claims Must Be Dismissed Under Rule 12(b)(6) as Plaintiff's Complaint Fails To State A Claim Upon Which Relief May Be Granted.

Irrespective of the lack of personal jurisdiction over Johnston Barton in Tennessee, Plaintiff's Complaint fails to state a claim and must be dismissed as a matter of law. "When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tennessee*, 188 F.3d 687, 691 (6th Cir. 1999). However, "[t]he 'factual allegations must be enough to raise a right to relief above the speculative level;' they must 'state a claim to relief that is plausible on its face.'" *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). Construing the allegations in Plaintiffs' Complaint as true, Plaintiff nonetheless has failed to state a claim for relief that is plausible on its face and the Complaint should be dismissed in its entirety.

### A. The Litigation Privilege Bars Plaintiff's Claims.

The entirety of Plaintiff's claims against Johnston Barton in this case arise out of Johnston Barton's alleged actions in representing its client, NBCS, in connection with threatened litigation, including an ultimate settlement of the threatened claim. The Plaintiff, who by his own admission **is not** a client of Johnston Barton, nonetheless claims that Johnston Barton's alleged actions in representing its client harmed him. As a matter of law, however, Johnston Barton is immune from any claims based on such facts pursuant to Tennessee's litigation

privilege. *See Unarco Material Handling, Inc. v. Liberato,* 2010 WL 744394, *9 (Tenn. Ct. App. Mar. 2, 2010).

In *Unarco*, an attorney for a company involved in a dispute with the plaintiff company, Unarco, was sued by Unarco for inducing one of Unarco's former officers to breach a confidentiality agreement and provide a sworn statement related to the plaintiff's prior actions, which the attorney and his clients contemplated using in future litigation against the plaintiff. *Id.* Specifically, after calculating the economic effects a breach of the agreement might have on the former officer, the attorney arranged for his client to provide an indemnity to the officer for any claim by Unarco against the former officer for breaching his confidentiality agreement. *Id.* In the resultant action by Unarco against the attorney for inducing the breach, the attorney filed a motion for summary judgment, contending that even if his actions constituted an inducement of a breach of contract as Unarco alleged, the attorney had immunity, as he was acting at all times as the attorney for his client. *Id.* at *2. The trial court granted the attorney defendant's motion, and the Court of Appeals, following a long review of the litigation privilege in Tennessee, and as extended and modified in other jurisdictions, affirmed. *Id.* at *3-*10 (citations omitted).

Pursuant to the Court of Appeals' extension of the litigation privilege in *Unarco*, an attorney's *conduct* even *prior to the commencement of litigation* is immune and protected by the litigation privilege so long as:

> (1) the attorney was acting in the capacity of counsel for a client or identifiable prospective client when the conduct occurred, (2) the attorney was acting in good faith for the benefit of and on behalf of the client or prospective client, not for the attorney's self interest, (3) the conduct was related to the subject matter of proposed litigation that was under serious consideration by the attorney, and (4) there was a real nexus between the attorney's conduct and litigation under consideration.

17

*Id.* [8]

Whether Johnston Barton's actions are protected by the litigation privilege and Johnston Barton is thereby immune is a question of law. *Unarco*, at *3. Here, it is clear that all of the factors enunciated by the *Unarco* Court for application of the privilege are present: (1) Johnston Barton is alleged to have been acting in the capacity of counsel for an identifiable client: NBCS. (Compl. ¶ 23). (2) There are no allegations that Johnston Barton acted in bad faith in the sense set forth by the *Unarco* Court, i.e., no allegations that Johnston Barton acted "for the attorney's self-interest."[9] (3) Johnston Barton's conduct, such as there was conduct, was related to the subject matter of proposed litigation that was under serious consideration by the attorney; specifically, Johnston Barton's client had received a demand and engaged Johnston Barton to defend the claim. (*Id.* ¶¶ 23-28). Finally, (4) there was a real nexus between the attorney's conduct (such as there was) and the litigation under consideration; to wit, the conduct resulted in settlement of the litigation. (*Id.* ¶¶ 25-30).

---

[8] The litigation privilege has undergone a slow but steady evolution in Tennessee. Tennessee courts long have held that *statements* made during the course of litigation are absolutely privileged against suit *for defamation*. *See e.g. Hayslip v. Wellford*, 195 Tenn. 621, 263 S.W.2d 136 (Tenn. 1953). In *Lann v. Third Nat'l Bank in Nashville*, 277 S.W.2d 439, 444 (Tenn. 1955), the Tennessee Supreme Court extended the litigation privilege to apply to speech-related causes of action other than defamation. More recently, in *Simpson Strong-Tie Co., Inc. v. Stewart, Estes & Donnell*, 232 S.W.3d 18, 24 (Tenn. 2007), the Tennessee Supreme Court extended the litigation privilege to statements made *prior to the start of litigation*. The Court of Appeals' extension of the privilege to conduct occurring prior to the commencement of litigation is a natural progression of a privilege based upon the "public policy of securing to attorneys as officers of the court the utmost freedom in the efforts to secure justice for their clients." *Unarco*, at *4 (quoting *Simpson Strong-Tie Co.*, 232 S.W.3d at 24).

[9] It is clear from the *Unarco* ruling that the "good faith" requirement means that the attorney acted in good faith in the furtherance of his client's interest and did not act in the attorney's own self-interest, as opposed to whether the attorney purportedly acted in bad faith vis-à-vis the plaintiff third-party non-client. Indeed, in *Unarco*, there is no question but that the defendant attorney did actively and knowingly solicit a party to a confidentiality agreement with the plaintiff to breach that agreement and provide the attorney (and his client) information for use in litigation against the plaintiff—hardly good faith action as concerns the plaintiff. Nonetheless, the Court held that as a matter of law the attorney was entitled to the protection of the privilege. *See Unarco*, at *9 (holding that defendant was entitled to immunity under the privilege because, among other reasons, he "was acting in good faith to protect or further the interests of his client, and not for his own self-interest"). Were the rule otherwise (i.e., that the plaintiff could simply allege the attorney acted in bad faith vis-à-vis the plaintiff), the privilege would be nullified effectively. The non-client would always allege the attorney acted in bad faith as concerns the non-client.

18

Although the *Unarco* decision does not expressly mention settlement negotiations as among the pre-litigation conduct protected by the privilege, it is clear that an attorney's negotiation of a settlement of a threatened claim (both generally as well as specifically as alleged in this case), falls within the parameters of what the Court of Appeals intended to protect. In any event, numerous courts outside of Tennessee have expressly held that the litigation privilege applies to actions taken by attorneys related to settlement. *See, e.g., Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1275 (11th Cir. 2004)(holding that "actions, taken in the course of settlement negotiations, are inextricably linked to the process of guiding ongoing litigation to a close--actions we conclude are protected by Florida's litigation privilege."); *North Star Capital Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324, 1330 (M.D. Fla. 2009) (noting that the litigation privilege applies to torts other than defamation and applies to conduct that occurs during settlement negotiation); *Ruberton v. Gabage*, 654 A.2d 1002, 1006 (N.J. Super. 1995) (applying the litigation privilege to statements in a settlement conference); *Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.*, 473 F. Supp. 2d 1083, 1088 (S.D. Cal. 207) (same).[10]

Because, taking all of the well-pled factual allegations in the Complaint as true, Plaintiff's claims are based in whole on the alleged actions of Johnston Barton in representing its client, for the benefit of its client and not for its own self interest, in conduct related to proposed litigation under serious consideration (i.e., it had been threatened), and there was an absolute real nexus between Johnston Barton's conduct and the litigation under consideration, Johnston Barton's alleged actions are protected by the litigation privilege and Johnston Barton is immune

---

[10] Also of note, courts outside of Tennessee have applied the litigation privilege to causes of action that are "unconventional and sometimes novel" if the cause of action is related to conduct by an attorney that is "within the judicial process." *See Loigman v. Township Committee of Township of Middletown*, 889 A.2d 426, 435 (N.J. 2006) (applying litigation privilege to § 1983 claims by citizen subjected to a sequestration order in a hearing against the township's counsel). Among the many categories into which Plaintiff's claims in this case could be said to fall, certainly "unconventional" and "novel" are among them.

from suit on Plaintiff's claims as a matter of law. Accordingly, Plaintiff's Complaint must be dismissed in its entirety.

### B. Given NBCS' Unfettered Right to Settle The Smith Claim, No Alleged Action of Johnston Barton Could Have Caused Plaintiff Harm As A Matter of Law.

The litigation privilege aside, a second basis upon which the Court can dismiss all three alleged causes of action in this case is the lack of proximate cause as a matter of law. Specifically, only NBCS could actually "settle" the Smith matter--Johnston Barton was not named as a potential defendant and had no ability to settle the Smith matter on behalf of anyone without authority. NBCS, on the other hand, (as Plaintiff refuses to recognize), had an express, unfettered contractual right to settle any claims naming NBCS and any Capital Trust broker. Pursuant to the express terms of the indemnity provision of the License Agreement between NBCS and Capital Trust, the very provision on which Plaintiff relies as creating some duty on the part of Johnston Barton to Plaintiff, "NBCS, *at its sole option and without the prior approval of either the License* [i.e., Capital Trust] *or applicable Representative* [i.e. Plaintiff] *may settle or compromise any claim at any time*." (License Agreement (<u>Ex. A</u>) ¶ 6) (emphasis added).[11]

Moreover, according to the Complaint, NBCS was going to settle the Smith claim no matter what. (*See* Compl. ¶ 22 (alleging that NBCS "looked at Mr. Smith's claim as an opportunity to exact some form of revenge" and as "an opportunity to harm [Plaintiff's] reputation . . . and it seized the opportunity.") This then begs the question, what action or inaction on the part of NBCS's lawyers in negotiating the ultimate settlement caused any harm to

---

[11] As explained previously, the Court may consider the text of the License Agreement without converting this motion into a summary judgment motion. *See infra* Note 3.

Plaintiff when NBCS (a) was going to settle the claim and (b) had the absolute contractual right to do so. The answer, of course, is "nothing."

A quick look at the causation allegations in each of the specific causes of action (putting aside the claims' other respective, individual infirmities, which are discussed *infra*) merely underscores that Plaintiff cannot prove proximate cause for any of his claims as a matter of law. Johnston Barton is alleged to be liable for breach of fiduciary duty by failing to protect Plaintiff's interests and actively harming his interests, including allegedly failing to provide him notice before the settlement agreement was reached, thereby proximately causing Plaintiff harm. (Compl. ¶¶ 43). The only harm alleged anywhere in the Complaint of course is damage to Plaintiff's reputation. Given that NBCS had the absolute right to settle Mr. Smith's claims, and was going to do so no matter what according to Plaintiff, no action or inaction on the part of Johnston Barton (or any other law firm)—including notifying Plaintiff in advance of NBCS's intentions (assuming it ethical to do so)—could have prevented Plaintiff's purported harm. Thus, as a matter of law Johnston Barton's alleged breach of duty was not the cause of any harm to Plaintiff.

The same is true with respect to Plaintiff's purported TCPA claim. First, the alleged action underlying that claim is the fact that Johnston Barton purportedly "settled the claim for an amount it knew would cause permanent harm to Mr. Pagliara, and did so without providing any notice of any kind . . . ." (Compl. ¶ 46). In addition, Johnston Barton purportedly advised Mr. Smith's counsel that it did not act or speak for Plaintiff, despite having advised Plaintiff not to contact Mr. Smith or his counsel. (*Id.* ¶ 47). Again, given that NBCS had the absolute right to (and was going to) settle Mr. Smith's claims, nothing Johnston Barton did or allegedly should have done proximately caused Plaintiff damage as a matter of law.

Finally, Plaintiff's "intentional infliction of harm" cause of action is based on the following: "By settling the Smith claim in the manner in which it did, Johnston Barton harmed Mr. Pagliara and his reputation. Johnston Barton knowingly and intentionally participated in conduct that it knew, or reasonably should have known, would harm Mr. Pagliara in his person, his business and his reputation" and, allegedly, "[a]s a direct and proximate result of Johnston Barton's conduct, Mr. Pagliara has been harmed and suffered damages." (Compl. ¶¶ 52-53). Again, Johnston Barton did not "settle" the Smith claim--NBCS settled the Smith claim; NBCS had the absolute contractual right to settle the Smith claim; and NBCS, according to the Complaint, was motivated to and intended to settle the Smith claim. Nothing Johnston Barton did or did not do can change that fact. Nothing *any lawyer* representing NBCS could have done would have changed the end result based on the allegations in Plaintiff's own Complaint. Indeed, according to Plaintiff's theory, *any* law firm that represented NBCS in settling the Smith claim would be subject to liability to Plaintiff, even though the ultimate power (and according to Plaintiff, motivation) to settle resided in NBCS.[12]

Accordingly, Plaintiff cannot show proximate cause as a matter of law and his claims should be dismissed in their entirety.

### C. Plaintiff's Claim for Breach of Fiduciary Duty Fails As a Matter of Law.

The lack of causation aside, Plaintiff's breach of fiduciary duty claim also fails as a matter of law because no such duty existed. Having no attorney-client relationship on which to base this purported fiduciary duty, Plaintiff instead relies on the indemnitee-indemnitor

---

[12] To the extent NBCS had any duty to make a reasonable and good faith settlement, (*see Transam. Ins. Co. v. Bloomfield*, 401 F.2d 357, 362-63 (6th Cir. 1968)("If the surety or the indemnitee has the legal right to adjust or settle the claim, either by reason of the terms of his contract or because of actions on the part of the indemnitor, it is only necessary that such an adjustment or settlement be a reasonable one and made in good faith."), its failure to do so would be a defense to any indemnity action against Capital Trust or Plaintiff by NBCS, not provide grounds for an affirmative cause of action by Plaintiff against NBCS—and certainly not against NBCS's counsel.

22

relationship between NBCS and Capital Trust as set forth in the License Agreement as somehow giving rise to a fiduciary duty. Specifically, Plaintiff alleges:

> Although Johnston Barton had been retained by NBCS to defend the Smith claim, Johnston Barton nevertheless owed (and breached) a duty to Mr. Pagliara in connection with its handling of the claim. This is so because it was Mr. Pagliara and his partners, under the terms of the License Agreement, who were (according to NBCS and Johnston Barton) to pay the costs of the claim and to indemnify NBCS against any damages awarded to claimant.

(Compl. ¶ 34).[13] Johnston Barton allegedly breached this "fiduciary" duty by failing to protect Mr. Pagliara's interests and failing to provide notice to him of the $30,000 settlement. (Compl. ¶¶ 41-44). Because Johnston Barton had no fiduciary duty to Plaintiff as a matter of law, however, this claim fails and must be dismissed.

It has been noted that "the predicate of the attorney's fiduciary obligations is the existence of an attorney client relationship," and that "fiduciary relationship requires more than the status of being an attorney or someone else's attorney." MALLEN, RONALD E. & JEFFREY M. SMITH, LEGAL MALPRACTICE § 15:3 (2010), p.p. 1, 2. Indeed, research has not revealed any Tennessee cases, state or federal, finding, referencing or creating a fiduciary relationship between an attorney and a nonclient. While there are Tennessee cases setting forth the *very limited* circumstances under which an attorney can be held liable for professional negligence to a nonclient, those cases do not apply to the allegations against Johnston Barton. *See*, *e.g., Akins v. Edmondson*, 207 S.W.3d 300, 306-07 (Tenn. Ct. App. 2005)(noting that, based upon RESTATEMENT (SECOND) OF TORTS § 552, an attorney may be liable to a non client for negligently supplying false information for the guidance of others and upon which such persons reasonably rely and suffer loss, but dismissing claim); *Collins v. Binkley*, 750 S.W.2d 737, 738

---

[13] Again, lost on Plaintiff is the fact that the License Agreement not only clearly provided that Capital Trust would indemnify NBCS for any claim, but it gave NBCS the absolute right to settle any claim without Capital Trust's or any of its partners or brokers consent. (License Agreement (Ex. A) at ¶ 6).

Case 3:10-cv-00679   Document 9   Filed 08/06/10   Page 23 of 29 PageID #: 57

(Tenn. 1988)(affirming remand of case against attorneys for negligently preparing warranty deeds on which nonclients relied to their detriment). In this case, Plaintiff has failed to allege any facts that would subject Johnston Barton to a claim for professional negligence by a nonclient.

Moreover, while at least one non-Tennessee court has held that an attorney's representation of an indemnitee gives rise to a *duty of care* on the attorney's part to the indemnitor, (i) not even that case held that such a duty was a fiduciary duty and (ii) the case is inapplicable here. *See Credit General Ins. Co. v. Midwest Indemnity Corp.*, 872 F. Supp. 523, 526-27 (N.D. Ill. 1995). In that case, a suit for legal malpractice and not for breach of fiduciary duty, the court held that attorneys for one party in litigation owed a duty of care to an indemnitee of the attorney's client, and therefore were subject to suit for negligently handling prior litigation that resulted in a large judgment against their client (for which the indemnitor faced exposure as well). The primary basis for the holding was that the attorneys had to have known that any negligent acts resulting in a larger judgment in the prior litigation would impact the indemnitor as well. *Id.* Thus, it was because the indemnitor ultimately might have to pay for any judgment rendered in the prior litigation that the attorneys for the indemnitee in the prior litigation owed a duty of care to the indemnitor as well, even though it was not a client.

Neither the *Credit General* holding nor the principles on which it is based is applicable or supports Plaintiff's position here. First, *Credit General* does not even support the proposition that any indemnitor--indemnitee relationship between NBCS and Plaintiff and/or Capital Trust gave rise to a fiduciary duty between NBCS' counsel and any such potential indemnitor. At best, it could theoretically have given rise to an argument that in handling the Smith claim, Johnston Barton owed a duty of care to any indemnitor not to negligently do anything to up the stakes or

increase the exposure to Capital Trust. There are no allegations that Johnston Barton breached any such duty in that manner.[14] More importantly, as Plaintiff's own Complaint makes clear, NBCS dropped any claim of indemnity against Capital Trust for the Smith matter, thus mooting any possible damage to Capital Trust by increased litigation exposure. (Compl. ¶ 33).

Second, while Tennessee courts have permitted some claims for professional negligence against attorneys by nonclients, they still specifically do not allow a *per se* malpractice claim, such as was asserted in *Credit General Ins. See Akins, supra*, 207 S.W.3d at 306 (holding that "[a] cause of action for attorney malpractice requires *inter alia* a showing of 'employment of the attorney.'")(citations omitted).

Finally, while cases like *Credit General Ins.* and even *Akins* have expanded the reach of an attorney's **duty of care** to nonclients in certain situations, Plaintiff can point to no such authority expanding an attorney's **fiduciary duty** beyond his or her client. As Mallen and Smith note, "[t]he developing concept of expanded privity, resulting in an attorney's liability for negligence to one other than the client, *has not included an attorney's fiduciary obligations.* Although expanded privity rules can result in a duty of care to a third person, there is no implied attorney-client relationship and, thus, no fiduciary obligations." LEGAL MALPRACTICE § 15:3 *supra*, p. 4. Cases from other jurisdictions demonstrate as much. *See, e.g., Estate of Leonard v. Swift*, 656 N.W.2d 132, 137 (Iowa Sup. Ct. 2003)(affirming dismissal of a suit against attorney for breach of fiduciary duty where plaintiff had no attorney-client relationship with attorney); *United States Fidelity & Guaranty Co. v. E.L. Habetz Builders, Inc.*, 642 F. Supp. 2d 560, 567

---

[14] Moreover, to the extent any such indemnity obligation arose from the License Agreement, as Plaintiff alleges (Compl. ¶ 34), it would not give rise to any duty to Plaintiff, individually. Rather, if it existed at all such a duty would only run to Capital Trust and would not create **any** duty to Plaintiff Pagliara. Under Tennessee law, a "partnership is an entity distinct from its partners." Tenn. Code Ann. § 61-1-201. Accordingly, as the ABA has noted, "a lawyer who represents a partnership represents the entity rather than the individual partners unless the circumstances show otherwise." ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 91-361 (1991). *See also* Tenn. R. Prof. Conduct R. 1.13(a) ("a lawyer employed or retained by an organization represents the organization.").

(W.D. La. 2007) (holding, "we conclude that it is fundamental to the attorney-client relationship that an attorney have an undivided loyalty to his or her client. This duty should not be diluted by a fiduciary duty owed to some other person, such as co-counsel to protect that person's interest in a prospective fee."); *Valls v. Johanson & Fairless, L.L.P.*, ___ S.W.3d ___, 2010 WL 2195446, at *5 (Tex. App.—Hous. [14th Dist.] June 3, 2010) (in which court held that a plaintiff must present proof of an attorney-client relationship in order to assert a claim of breach of fiduciary duty against an attorney).[15]

In sum, there is no legal basis upon which Plaintiff can maintain that Johnston Barton owed Plaintiff a fiduciary duty. Accordingly, Plaintiff's claim for breach of fiduciary duty must be dismissed.

### D. Plaintiff's TCPA Claim Should Be Dismissed, as the TCPA Does Not Apply to Lawyers Practicing Law.

Plaintiff's purported claim under the Tennessee Consumer Protection Act likewise fails as a matter of law. As an initial matter, the TCPA clearly applies only to consumer transactions in trade or commerce. *See Crossley Constr. Corp. v. Nat'l Fire Ins. Co. of Hartford*, 237 S.W.3d 652, 657 (Tenn. Ct. App. 2007) (holding that the TCPA only applies to acts affecting the conduct of any trade or commerce); *see also Cloud Nine LLC v. Whaley*, 650 F. Supp. 2d 789, 798 (E.D. Tenn. 2009) (noting that the "essence of deception [under the TCPA] is misleading consumers by a merchant's statements, silence or actions."). Attorney actions within the practice of law do not qualify as consumer transactions in trade or commerce and do not fall under the coverage of

---

[15] That the concept of fiduciary duty has not been expanded also is apparent from the RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS. The RESTATEMENT specifically references lawyers' potential duty of care to non clients. *See* RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS §§ 48-51 (2000) (setting forth lawyers duty of care including, as discussed in Section 51 "Duty of Care to Certain Nonclients"). With respect to fiduciary duty, however, the RESTATEMENT refers only to a lawyer's potential liability to his or her own client *See* RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 49 ("[A] lawyer is civilly liable ***to a client*** if the lawyer breaches a fiduciary duty to the client.") (emphasis added). In its entirety, in fact, the RESTATEMENT "does not mention a fiduciary obligation to a nonclient." LEGAL MALPRACTICE § 15:3, *supra*, p. 4.

the TCPA.  As the Eastern District of Tennessee held in a fairly recent case, "[T]he TCPA does not apply to lawyers practicing law because the practice of law is a profession and is not trade or commerce as defined in the TCPA."  *Schmidt v. Nat'l City Corp.*, No. 3:06-CV-209, 2008 WL 597687, at *3 (E.D. Tenn. Mar. 4, 2008); *see also Jordan v. Clifford*, No. E2009-01121-COA-R3-CV, 2010 WL 2075871, at *5 (Tenn. Ct. App. May 25, 2010) (in which appellate court acknowledged and did not contradict a trial court's ruling that the TCPA does "not apply to professional services by an attorney.").  In the Complaint, Plaintiff alleges that Johnston Barton "negotiated a settlement of the Smith complaint that was grossly unfair to Mr. Pagliara and it did so in a deceptive manner."  (Complaint at ¶ 46).  The action of negotiating a settlement is clearly a service related to the practice of law.  *See* 16 TENN. PRAC. § 2:71 ("The wise lawyer will generally seek to avoid the stress, hostility, expense, delay and uncertainty of litigation for his or her client by working hard to achieve a negotiated and fair settlement.").  Thus, the TCPA cannot apply to Johnston Barton's actions as a matter of law, and Plaintiff's TCPA claim should be dismissed.

### E. Plaintiff's Claim for Intentional Infliction of Harm Claim Should Be Dismissed, As There Is No Such Cause of Action under Tennessee Law.

A search of Tennessee law reveals no existing cause of action for "intentional infliction of harm."  In addition, a cursory search of the laws in other states reveals that almost no states recognize such a cause of action.  Johnston Barton can speculate that perhaps Plaintiff is attempting to assert a cause of action for intentional infliction of emotional distress; however, Plaintiff has failed to allege the elements of such a cause of action.  *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (holding that in order to assert a claim for intentional infliction of emotional distress a plaintiff must allege (1) that the conduct complained of was intentional or reckless; (2) that the conduct was so outrageous that it is not tolerated by civilized society; and

Case 3:10-cv-00679   Document 9   Filed 08/06/10   Page 27 of 29 PageID #: 61

(3) that the conduct complained of resulted in a serious mental injury). Plaintiff has not alleged that Johnston Barton's conduct was intentional, outrageous, or that the conduct caused him serious mental injury. Therefore, Plaintiff's claim for "intentional infliction of harm" must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Johnston Barton respectfully requests that the Court grant Johnston Barton's motion and dismiss the Complaint in its entirety.

Respectfully submitted,

/s/ John C. Hayworth
Joseph F. Welborn, III (#15076)
John C. Hayworth (#16133)
Emily B. Warth (#27607)
WALKER, TIPPS, & MALONE, PLC
2300 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219
(615) 313-6000

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served via the Court's electronic filing system upon the following, this August 6, 2010:

Eugene N. Bulso, Jr.
414 Union Street, Suite 1740
Nashville, TN 37219


                                                              /s/ John C. Hayworth