UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TIMOTHY J. PAGLIARA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:10-cv-00679 |
| JOHNSTON BARTON PROCTOR & ROSE, LLP | ) Judge Trauger ) ) |
| Defendant. | ) ) ) |

## DECLARATION OF PAUL KROG

PAUL KROG declares and states as follows:

1. I am over 18 years of age and competent to make the statements in this affidavit.

2. On August 17, 2010 I served on Angie McEwen, a partner of Johnston, Barton, Proctor & Rose, LLP, a summons and complaint in the this matter.

3. Service was effected in the Center Building on the campus of Vanderbilt University.

4. Part of this Building is occupied by Vanderbilt Law School's Career Services Office. This office space is divided into a "Career Services Suite" and an "Interview Suite."

5. I arrived at the Center Building shortly after 8:00 a.m. on August 17, 2010.

6. At this time there were present in the building around half a dozen people appearing to be Vanderbilt law students who were seated at tables in the Career Services Suite.

Several employees of the Vanderbilt Career Services Office were seated at desks, in offices, and standing or walking through the Career Services Suite and Interview Suite.

7. After speaking briefly with two employees of the Career Services Office, I walked through the doorway joining the Career Services Suite to the Interview Suite and took a chair that had been set up in the hallway outside Room 124 in the Interview Suite. Although there were several other chairs in the hallway, none of these were occupied when I arrived, nor did anyone else sit in one while I was present.

8. I did not observe any students in the Interview Suite when I entered it or while I sat in the hallway chair.

9. I did not speak with any student or any attorney other than Ms. McEwen while at Vanderbilt.

10. I sat in the hallway chair for approximately ten minutes. During this time employees of the Career Services Office escorted persons appearing to be attorneys from interviewing firms into the Interview Suite. The employee showed the attorneys to the respective rooms in which their firms had been scheduled to interview and directed the attorneys' attention to the location of the coffee pot at the end of the hallway and the restrooms around the corner.

11. The attorneys spoke with the employees of the Career Services Office and each other in passing in the Interview Suite hallway, but neither the attorneys nor the employees congregated, stood, or loitered in the hallway.

12. Between approximately 8:15 and 8:20, an employee of the Career Services Office entered the Interview Suite followed by a professionally dressed woman. This woman resembled the photograph on the "Our People: Angie Godwin McEwen" page of Johnston,

Barton, Proctor & Rose, LLP's website. The Career Services Office employee addressed the woman as "Ms. McEwen" and directed her to Room 124.

13. The Career Services Office employee and Ms. McEwen entered Room 124. The employee directed Ms. McEwen's attention to the coffee, restroom, and the small basket of courtesy treats provided in the interviewing room. The employee directed Ms. McEwen to notify her of further needs or inquiries, and then left Room 124 and exited the Interviewing Suite. Ms. McEwen thanked her as she left, and then put down her purse on the desk in the interviewing room.

14. After these events, I stood, walked into Room 124, and asked Ms. McEwen if she was, in fact, Ms. McEwen. When she stated that she was, I stated that the papers I carried were for her, and handed her the summons. Ms. McEwen thanked me, after which I left the room, walked out of the Interview Suite via the doorway to the Career Services Suite, and exited the Center Building.

15. My brief conversation with Ms. McEwen was pleasantly and amicably conducted at an appropriate volume.

16. No person beside myself and Ms. McEwen was present in Room 124 at the time I effected service.

17. No person was present in the hallway immediately outside Room 124 at the time I effected service.

18. It is not possible to see into Room 124 from the Career Services Suite, most other rooms in the Interviewing Suite, or that part of the hallway not immediately outside Room 124. It may be possible to see some portion of Room 124 from the doorway of Room

121, another room in the Interviewing Suite being used for interviews on that day. I did not observe any person in Room 121 in a position to view Room 124 when I effected service.

19. It is my belief, based on the layout of the Center Building and my observation of the surroundings at the time, that no other person, besides Ms. McEwen and myself, had a line of sight into Room 124 at the time I effected service or observed any part of our interaction.

20. My appearance at all times while at Vanderbilt was professional.

21. At all times while at Vanderbilt and until delivery to Ms. McEwen, I carried the summons in an opaque folio. The summons was not observed by any person at Vanderbilt besides myself before its delivery to Ms. McEwen.

22. I do not believe that my appearance or conduct while at Vanderbilt, whether acting or speaking, caused or should have caused alarm, fear, disgust, embarrassment, or untoward attention of any kind. I did not observe any such reaction from any person while at Vanderbilt.

23. No interviews had taken place on the 17th when I arrived, nor were there interviews in progress during the events herein described. The Vanderbilt Law School Career Services Office's website indicates that interviews did not begin on that day until 8:40 AM.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of September, 2010, in Nashville, Tennessee.

_____
PAUL KROG